(October 21, 1924.)

## D. H. SUTPHEN, Plaintiff, v. MYRTLE P. ENKING, Auditor and Recorder of Gooding County, Idaho, Defendant.

### [230 Pac. 38.]

PRIMARY ELECTION—PARTY TICKET—NOMINATION OF NONMEMBER OF PARTY—VACANCY.

    1. One of the purposes of the primary election law of this state is to secure to every political party the absolute right to control its party nominations, excluding from any part in the choosing of its candidates every nonmember of such party, but there is no provision of such primary law that forbids a political party to nominate as its candidate a nonmember of such party.

    2. The nomination of such nonmember as a candidate on a party ticket by a primary election does not create a vacancy on such party ticket.

Original proceedings for writ of mandate. Writ denied.

Bissel & Bird and W. T. Stafford, for Plaintiff.

Under the election laws of this state a candidate for election to a county office cannot become the candidate of

more than one party.  (C. S., secs. 543, 573; *State v. Wells*, 92 Neb. 337, 138 N. W. 165, 41 L. R. A., N. S., 1088.)

The nomination of M. F. Ryan as the candidate of the Republican party for the office of prosecuting attorney of Gooding county was insufficient and inoperative because he was not nominated as prescribed by C. S., sec. 516 et seq.

Under the primary laws of Idaho, a party cannot nominate as its candidate for a county office one affiliated with another party.  (*State v. Wells, supra.*)

On September 20, 1924, a vacancy existed on the Republican ticket for the office of prosecuting attorney of Gooding county, which the county central committee of the Republican party had power to fill.  (C. S., sec. 554; *State v. Wells, supra.*)

It is defendant's duty as the auditor of Gooding county to place plaintiff's name upon the official ballot to be used at the ensuing general election as the candidate of the Republican party for the office of prosecuting attorney of Gooding county.  (C. S., sec. 572.)

The primary election law of Idaho creates what is known as the "closed primary" and the person receiving the highest number of votes of any particular party at such election must be a member of that party to become the nominee of such party.  (C. S., sec. 538.)

James & Ryan, for Defendant.

Candidates may be nominated by writing in names in blank spaces on primary ballot.  (*Donovan v. Dougherty*, 31 Ida. 622, 174 Pac. 701; *Hart v. Jordan*, 168 Cal. 321, 143 Pac. 537; C. S., secs. 572, 573; *Edwards v. Jordan*, 183 Cal. 791, 192 Pac. 856.)

The purpose of the primary law is to give every elector affiliated with any political party the privilege of not only voting for avowed candidates, but of writing in the name of any person in the blank provided.  (9 R. C. L., p. 1072, 1074.)

Any body of electors has the right to choose whom it will for its candidate for office regardless of the political

affiliations of such candidate. (*Matter of Callahan,* 200 N. Y. 59, 140 Am. St. 626.)

The law does not prevent voting at party primaries for a candidate who is not a member of such party by writing in of names. (C. S., sec. 525.)

Only members of the political party holding the primary are entitled to vote, but such law does not apply to candidates and does not say that a political party holding a primary cannot write in the name and nominate a man who is not a member of their party. (C. S., secs. 529, 572, 573.)

At a primary election anyone who has the statutory qualifications to fill an office may be nominated by any political party by such party's name being written in on the primary ballot regardless of his party affiliations. (Dissenting opinion of Rose, J., in *State of Nebraska v. Wells,* 92 Neb. 337, 138 N. W. 165, 41 L. R. A., N. S., 1088, at 1094; *State v. Tallman,* 82 Wash. 141, 143 Pac. 874.)

A political party may nominate for office a person who has been nominated by another political party for the same office. (*Payne v. Hodgson,* 34 Utah, 269, 97 Pac. 132; *State v. Yankee,* 129 Wis. 662, 109 N. W. 550; 18 Cent. Dig., Elections, sec. 114½; *Freeman v. Board of Registry,* 76 N. J. L. 83, 67 Atl. 713; *State ex rel. Frazier v. Siebel,* 262 Mo. 220, 171 S. W. 69; *Donovan v. Dougherty, supra; Fickert v. Zemansky,* 157 Cal. 398, 108 Pac. 269; 9 R. C. L. 1089.)

A person may lawfully be the nominee of two parties for an office; the only condition put upon him by the law being that he shall designate the ticket upon which he desires his name to appear. (*State v. Superior Court,* 70 Wash. 662, 127 Pac. 310.)

The person receiving the highest number of votes at the primary election shall be the nominee of such party for the specified office. (C. S., sec. 538.)

The Republican Central Committee has no right to declare a vacancy by reason of the fact that, as they claim, the candidate previously nominated was not eligible. (C. S.,

sec. 554; *State v. Roach,* 246 Mo. 56, 150 S. W. 1073; note to 41 L. R. A., N. S., at p. 1090, with a statute similar to ours.)

If no nomination was made at the primary as contended by plaintiff, there was no such vacancy as can be filled by the Republican County Central Committee. (*Stewart v. Polly,* 30 S. D. 54, 137 N. W. 565; *Healey v. Wipf,* 22 S. D. 343; 117 N. W. 521; *State v. Hayward,* 141 Iowa, 196, 119 N. W. 620; *State v. Scott,* 87 Minn. 313, 91 N. W. 1101; 9 R. C. L. 1089.)

No vacancy exists as the nominee has not declined the nomination or become ineligible. (C. S., secs. 553, 554; *Napton v. Meek,* 8 Ida. 625, 70 Pac. 945.)

Candidate's name may appear on an election ballot more than once and statute prohibiting it is unconstitutional. (20 C. J. 148, and cases cited; 9 R. C. L. 1056; Ann. Cas. 1913B, 172; 1915C, 505; 37 L. R. A., N. S., 825; *Murphy v. Curry,* 137 Cal. 479, 70 Pac. 461, 59 L. R. A. 97.)

DUNN, J.—M. F. Ryan, of Gooding county, filed his affidavit prior to the recent primary as candidate for prosecuting attorney, setting forth his affiliation with and membership in the Democratic party. His name was printed on the Democratic primary ticket and he received the nomination of that party for that office. No candidate had his name printed on the Republican ticket, but Ryan received fourteen votes on the Republican ticket, which was the highest number received by any person for the office of prosecuting attorney on that ticket, and he was declared by the county canvassing board to be the Republican as well as the Democratic nominee for that office.

After the primary the Republican County Central Committee of Gooding county, claiming that a vacancy existed on the Republican ticket, met and nominated the plaintiff, D. H. Sutphen, as the Republican candidate for the office of prosecuting attorney of Gooding county and caused a certificate of such nomination to be presented to the auditor

of said county for filing. The auditor refused to file the same for the reason, as claimed by her, that no vacancy in said office existed. Thereupon the plaintiff brought this action to compel the filing of his nomination by the defendant.

It is the contention of the plaintiff that the present primary law of this state provides for what is commonly known as a "closed primary," and that the person claiming to be the Republican nominee for the office of prosecuting attorney cannot legally be such nominee for the reason that he is admittedly a member of the Democratic party and the nominee of that party for the office of prosecuting attorney. To establish his contention that the law of this state provides for a "closed primary" the plaintiff relies generally upon the provisions of the primary law for nominations by political parties but specifically upon that portion of C. S., sec. 538, which reads as follows: "The person of each party receiving the highest number of votes shall be the nominee for the specified office." He insists that the expression "the person of each party" limits the power of a political party to nominate and the right to receive the nomination to a person who is a *bona fide* member of such party. As we understand his position it is that, even though a nonmember of the party received at the primary election the vote of every member of the party, the law would not permit such nonmember to be the nominee for the office designated.

There can be no doubt, we think, that it was the intention of the legislature to provide for a "closed primary" to the extent of recognizing party nominations and securing to *bona fide* members of the political parties the absolute right to control the affairs of their respective parties, wholly excluding from such control every person who is not a *bona fide* member of such party. Whether the legislature intended also to forbid the *bona fide* members of a political party to nominate for office on their party ticket a person not a member of the party but who, for reasons satisfactory to the members of the party, would be an acceptable candi-

date of the majority or of all the party is quite another question. Certain it is if there was such legislative intent, nowhere in the statutes governing primary elections is there an explicit statement to that effect. It should be borne in mind that it was not the purpose of the legislature in enacting the primary law to arbitrarily control the selection of the candidates of the several political parties, but rather to secure to each party absolute control of its own affairs. C. S., sec. 529, provides that in order to vote at any primary election the person must be duly registered in the precinct wherein he offers to vote and be a member of the political party holding the primary at which he attempts to vote. That is, in addition to the party qualifications required of him, the person so offering to vote must be a legally qualified elector. One being a legally qualified elector and offering his vote at a general election may cast it for whom he pleases, and it must be counted exactly as he cast it. (C. S., sec. 572.) There is no authority vested in any person or set of persons legally to control his vote. We are unable to see how his rights are any more limited as to how he will vote, when he has brought himself within the requirements of a voter, at a primary election held under the law in this state. C. S., sec. 525, contains the following provision:

"The provisions of the general laws relative to the holding of elections, the furnishing of ballot boxes and supplies, the solicitation of voters at the polls, the manner of conducting elections, the officers and duties thereof at elections, the counting of ballots and making returns of the results, the canvassing of returns, and all other provisions relating to general elections, shall apply to primary elections in so far as they are applicable and consistent with the provisions of this chapter, . . . . "

C. S., sec. 572, governing general elections, contains this provision:

" . . . . Nothing in this title contained shall prevent any voter from writing on his ticket the name of any person for whom he desires to vote for an office, and such vote shall be

counted the same as if printed upon the ballot and marked by the voter. . . . . ''

Whether the legislature could, if it chose, limit the right to vote in the party primary so that under no circumstances could a political party nominate one on its party ticket who is not a member of the party it is not necessary to decide in this case, and we therefore do not decide it. All that we decide on that point is that the legislature has not so provided. Certainly we are not willing to construe an uncertain and ambiguous expression, such as that quoted from C. S., sec. 538, as depriving voters of a party of the right to do such a thing. If the legislature had intended to prevent such action by a political party we think it would have said so in clear and unmistakable terms.

The plaintiff has cited in support of his contention *State ex rel. Dunn v. Coburn*, 260 Mo. 177, 168 S. W. 956. This was a case in which the plaintiff, a Republican, who had entered himself as a candidate for the Republican nomination as circuit judge, sought to compel the proper authorities to enter his name also on the Progressive ticket as a candidate for that party's nomination for the same office.

Also the plaintiff cites *Gardner v. Ray*, 154 Ky. 509, 157 S. W. 1146. This was a case in which a Republican sought to compel the filing of his petition to become a candidate for assessor and the court held the petition to be fatally defective because it omitted certain declarations of party affiliations and previous support of nominees required by the law to be included in the petition.

Clearly neither of these cases is in point.

Plaintiff also cites *State ex rel. Curyea v. Wells*, 92 Neb. 337, 138 N. W. 165, 41 L. R. A., N. S., 1088, and *State ex rel. Murphy v. Graves*, 91 Ohio St. 36, 109 N. E. 590. *Curyea v. Wells*, the Nebraska case, comes more nearly paralleling the case here than any other cited. In that case the court held that the law of Nebraska provided for a "closed primary," and, without any specific provision to that effect, it construed the law of that state to forbid the placing as a candidate upon the party ticket of one not a member of

such party unless two or more political parties were affiliated for the general election, in which case a member of any one of such affiliated parties might be a candidate upon the several tickets of the parties so affiliated. There is this statement in the opinion that seems to us to distinguish that case from the case at bar and possibly to have furnished the ground upon which the court made its holding. It says that "the legislature, to carry out the idea of a closed primary, may well provide that the average voter shall not be deceived by a statement on the ballot at the general election that a candidate belongs to or affiliates with two antagonistic political parties when those parties have not affiliated, and the candidate has declared under oath that he affiliates with one of them, and has refused and neglected to state that he affiliates with the other." This refusal on the part of the candidate would seem to afford ground for the court's decision. Our law contains no such requirement.

In the Ohio case also the court construed the primary law, without any specific provision to that effect, as forbidding a voter who is affiliated with one party to be nominated at a primary as a candidate for office upon the ticket of any other party. In that case the applicant for the writ of mandate was a Republican who sought to compel the Secretary of State to put his name upon the general election ballot as a Progressive nominee for the office of judge of the supreme court of Ohio. The ground upon which he pressed his claim was the fact that at the primary election in that state where over eight thousand votes had been cast for the Progressive ticket he received four votes. In denying the right of the applicant to the writ the court made this significant statement: "The right to a peremptory writ of mandate by a relator must be predicated on the clear legal right of the relator and the inherent natural justice of his claim."

It would be exceedingly difficult for the applicant in that case to stand on the facts relied on in the face of that declaration of the court.

The nomination of Ryan a nonmember of the Republican party, did not create a vacancy on the ticket of that party.

The holding of this court in the case of *State ex rel. Mitchell v. Dunbar, ante,* p. 691, 230 Pac. 33, as to the appearance of the candidate's name on the official ballot, the rights of the candidate and the authority of the auditor is applicable to this case as to those matters.

The application for a writ of mandate is denied. Costs to defendant.

McCarthy, C. J., and William A. Lee and Wm. E. Lee, JJ., concur.

Budge, J., did not sit at the hearing nor take part in the decision of this case.