This is a complaint under Rule 3:81 in the nature of a proceeding in lieu of prerogative writ. The complaint was filed April 12, 1949. *Page 278 
Plaintiff, prior to March 31, 1949, filed with the City Clerk of the City of Jersey City the requisite number of signed petitions nominating him as a candidate for the office of commissioner of said city in the municipal election to be held Tuesday, May 10, 1949. The date after which petitions for this purpose could not be accepted was March 31, 1949.
On Tuesday, April 5, 1949, a draw was held at the office of the City Clerk to determine the order in which the candidates or groups of candidates would appear on the ballot to be used at the municipal election on May 10, 1949. (See the decision of this court in Witkowski v. Burke, 1 N.J. Super. 266, filed this day.) Prior to the drawing on April 5th plaintiff tendered to the acting City Clerk his resignation as a candidate. The tender was not accepted. The tender was in writing and reads:
 "NOTIFICATION OF WITHDRAWAL
TO HON. FRANCIS X. BURKE, CITY CLERK OF JERSEY CITY
DEAR SIR:
PLEASE TAKE NOTICE that I have withdrawn my candidacy for Jersey City Commissioner for the election to be held on May 10, 1949 and request that my name be stricken from the ballot because I fully and wholeheartedly support the FREEDOM TICKET.
 NICHOLAS D. INTROCASO, JR. FORMER CANDIDATE FOR JERSEY CITY COMMISSIONER
Dated: April 4, 1949."
The Acting City Clerk included among the slips inserted in the box used for the drawing a slip containing plaintiff's name. This was done over plaintiff's objection. Plaintiff was advised by the Acting City Clerk that under the law the Acting City Clerk could not accept any withdrawal of candidacy filed subsequent to the last day for filing petitions of candidacy, which was, as aforementioned, March 31, 1949, a date forty days prior to the date of the election to be held on May 10, 1949.
The right of a candidate for public office to resign is an inherent right of the individual. See Conroy v. Nulton,134 N.J.L. 471. The right, however, must give way to reasonable *Page 279 
legislative restrictions and also, in my view, to overriding public considerations in any circumstances where to accord the right of withdrawal would be inimical to the public interest.
It appears that in compliance with R.S. 40:75-6 the City Clerk has caused the names of the candidates as they were drawn on April 5, 1949, and in the order of the draw, to be published in the form of a facsimile ballot for three successive days in all the daily newspapers published in the City of Jersey City.
It further appears that in compliance with R.S. 19:56-5 the City Clerk has forwarded to the Hudson County Clerk military service ballots for use in said election and that the county clerk caused to be mailed on April 11, 1949, fourteen of such military service ballots and that eight additional such ballots will be mailed to applicants therefor. Such military service ballots list the candidates and brackets of candidates appearing thereon in the following order:
(1) Eggers bracket;
(2) Plaintiff, Nicholas D. Introcaso, Jr.;
(3) Freedom Ticket (Kenny);
(4) John W. Yengo;
(5) Frank Mueller;
(6) Dr. Leon Banach;
(7) John R. Longo.
I find that the mechanics necessary to be completed in respect of the voting machines to be used at said municipal election require that there be in the hands of the Superintendent of Elections by April 27th next the ballot strips to be inserted in such voting machines. I also find that the City Clerk has had printed or has had arrangements made to have printed ballot strips which will include the name of the plaintiff. I further find that the name of the plaintiff may be eliminated from the ballot strips used at the municipal election by the covering of his name on the ballot strips already printed or for which arrangements to print have been made and by the locking of the lever which will appear above the space in which the portion of the ballot strip containing plaintiff's name would appear. *Page 280 
I conclude that on the facts of this case there is no such overriding public consideration as that the relief sought by the plaintiff should be denied.
The complaint herein was not filed until April 12th, one week after the tender and refusal of his resignation. Notwithstanding that Laws 1948, chapter 381, permit the filing of complaints in proceedings in lieu of prerogative writs within thirty days of the accrual of the right, I am not to be understood as grounding this decision on that provision of said statute. In my view, depending upon the circumstances of particular cases, the thirty-day limitation there provided does not mean that in every case a proceeding such as that before me is timely if brought within thirty days. The determining consideration, at least in situations of this character, should be whether the plaintiff's inherent right to resign may be allowed him without confusing interference with the conduct of the election, or other conflict with a public interest to which his private interest must give way.
The defendant insists that this proceeding may not be entertained as a proceeding in lieu of prerogative writ but only as a proceeding under R.S. 19:13-12. It is my view that the statute referred to has no application to municipal elections under the Walsh Act and that since the Walsh Act is silent as to the right of recourse to the court by candidates for the protection of such rights the proceeding adopted by plaintiff herein is proper and may be viewed as a proceeding to review the acts of a public official for which no other method of review is provided.
The situation involving the military voter is admittedly troublesome. However, since the proofs show that not more than twenty-two such voters are as of this date involved (and in the neighborhood of 165,000 registered voters are eligible to vote) and since there remain twenty-five days before election day, I believe their interests can be protected by the mailing to them immediately of new ballots with the name Introcaso deleted therefrom and a letter of explanation advising them of the necessity for their substituting such ballots for any which have been returned. The county clerk has a *Page 281 
surplus of such ballots in his hands in number sufficient to use as substitutes by an appropriate deletion, either through covering up the name Introcaso or otherwise, as will clearly remove it from among the names available to the voter for the voting of his choice.
The order herein will include a provision directing the appropriate authorities to use the ballot strips now printed and so to arrange the voting machines as to cover up or blank out the name Introcaso and to lock the lever above the space in which such name would appear on the voting machine. The order will also include appropriate provisions concerning the military ballots to conform with the views expressed herein.
Submit order.