TYLER ET AL. *v.* BOARD OF SUPERVISORS
OF ELECTIONS OF BALTIMORE
COUNTY ET AL.

[No. 189, October Term, 1956.]

38

*Decided per curiam January 11, 1957.*

*Opinion filed April 9, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*A. Raymond Bevans, Jr.,* for appellants.

*Wylie L. Ritchey,* for appellee, Board of Supervisors of Elections of Baltimore County.

*Richard C. Murray,* for appellee, Democratic State Central Committee of Baltimore County.

BRUNE, C. J., delivered the opinion of the Court.

This suit arose upon a petition for a writ of mandamus against the Board of Supervisors of Elections of Baltimore County. It grew out of the adoption of a Charter for that County at the November, 1956, election. Among the provisions contained in that Charter were those dealing with the transition from the previous form of local government to the Charter form which were set forth in Article XI entitled "Transitory Provisions". These were commented upon in the Report of the Commission which drafted the Charter, and the importance of the election of the first County Council was there stressed. Under Section 1102 of the Charter and Article XIA of the Constitution of Maryland, the Charter took effect thirty days after its adoption. Section 1103 provided for the election of the first County Council on January 23, 1957. In this respect, as the "unofficial", but informative Notes of the Reporter to the Charter Commission state, it was patterned on the Charter of Montgomery County under which a special election for members of the first County Council was held thirty-five days after the adoption of the Charter of that County. This provision was upheld in the case of *County Commissioners for Montgomery County v. Supervisors of Elections of Montgomery County,* 192 Md. 196, 63 A. 2d 735.

Section 1103 of the Charter of Baltimore County further provided that nominations of candidates for the first County

Council should be filed with the Supervisors of Elections of the County on or before December 17, 1956, and that "Such nominations may be made by: (1) petitions conforming with the requirements provided in Article 33, Section 44 of the Annotated Code of Maryland (1951 Edition), and/or (2) the State Central Committees of Baltimore County of the Democratic and Republican Parties."

Acting in accordance with that authorization, the Democratic State Central Committee for Baltimore County (referred to below as the "Committee") nominated a slate of seven candidates for the offices of County Councilmen—one for each Councilmanic District. These nominees were accepted by the Board of Supervisors of Elections of Baltimore County (the "Board") as the nominees of the Democratic Party entitled to designation as such on the ballots. The original petitioner, a registered Democrat, was nominated by petition, not by the Committee. The Board took the position that he should be designated on the ballot as an "Independent" and declined to list him as a Democratic candidate. He sought a writ of mandamus to require the Board to identify him on the ballot as a Democratic candidate and to prevent any preference being given to candidates nominated by the Committee as candidates of the Democratic Party.

The petition was filed on January 3, 1957, a copy was served on the Board the next day and the Board very promptly filed a demurrer. The Committee sought and obtained leave to intervene and also very promptly filed a demurrer. A hearing was held before Judge Barrett on Friday, January 4th, at the conclusion of which he sustained the demurrers and dismissed the petition. There was some dispute as to whether or not on the day of that hearing and before adjournment of the court, the original petitioner reserved the questions raised by the demurrers for the decision of the Circuit Court for Baltimore County sitting *in banc*. What is designated as a motion for reargument was filed by the petitioner on January 7, 1957, and was heard on that day by Chief Judge Gontrum and Judges Barrett and Raine.

Prior to the filing of Tyler's "motion for reargument" five

other candidates in the same position as Mr. Tyler with regard to their nomination and designation on the ballot sought and obtained leave to intervene in the Tyler case as parties plaintiff. The order granting them leave to intervene stated in part that the intervenors "shall be deemed, for the purpose of this proceeding, to have adopted the allegations of the Petition for Writ of Mandamus * * * and to have adopted the prayers for relief in said Petition * * *."

At the beginning of the hearing on the so-called motion for reargument there was an extended colloquy between court and counsel in which members of the court and Mr. Peach (of counsel for the Committee) undertook to make it clear that what was called a motion for reargument was in reality a hearing before the Circuit Court sitting as a court *in banc,* under Article 4, Section 22 of the Constitution, and that the intervenors would be as fully bound by Judge Barrett's original decision and by the action of the court *in banc* as the original petitioner. Under Section 22 of Article 4, parties who invoke review by the court *in banc,* if unsuccessful, are barred from a further appeal to this Court. The outcome of the hearing was adverse to the original and intervening petitioners. By order of the court *in banc* Judge Barrett's decision was affirmed, the demurrer to the petition was sustained, without leave to amend, and the petition was dismissed. The appeal is from that order, notwithstanding Section 22 of Article 4 of the Constitution. The appellees, the Board and the Committee, moved to dismiss the appeal. The appellants resisted the motion, attacking the validity of the proceedings of the Circuit Court as a court *in banc* on various grounds which they asserted could not be cured by consent or waiver, and denying any knowing and intentional waiver of a right of appeal to this Court at the time of or through their intervention in the proceedings before the Circuit Court, notwithstanding the clear statements that the Circuit Court was sitting as a court *in banc* under Section 22 of Article 4. Though the terms of that Section were not quoted, the reference to it was explicit. We reserved decision on the motion to dismiss and considered the case on the merits. Though there is much force in the appellees' mo-

tion, we place the actual determination of the case on the merits.

It is quite obvious that from the schedule set up for transition from the old to the new form of government and for the prompt election of the first Council under the new form it would be impossible to make nominations in the usual way through party primaries or conventions. Accordingly, the election of the first Council was specifically exempted from the provisions of Sec. 201 (b) providing for the nomination and election of Council members in the same manner as members of the General Assembly. A similar prompt election was held valid in the Montgomery County Case of *County Commissioners for Montgomery County v. Supervisors of Elections of Montgomery County, supra,* and to involve no conflict with either Article 17, the Quadrennial Elections Amendment to the State Constitution, or what is now Section 2 of Article 25A of the Code (1951), the Express Powers Act applicable to chartered counties. The Baltimore County Charter differs from that of Montgomery County in that it permits nominations to be made by the State Central Committees of the Democratic and Republican Parties. This was no accident, as the Reporter's notes clearly show. We think that the inclusion of this provision in Section 1103 manifested a clear intention to permit the Committees of these two parties to designate those persons who should be the official candidates of their respective parties. This we think was a power clearly to be implied from the express grant of power to make nominations. Without it, the action of the party committees would not carry the party endorsement and responsibility for the selection of nominees which were evidently intended to be attached to the party power to make nominations through their respective committees. We find nothing novel or surprising in this grant of power and placing responsibility for its exercise. Under Article 3, Section 13 of the Constitution, as amended in 1936, any vacancy in the Senate or House of Delegates occurring between elections is filled by appointment of a successor by the Governor, to be made upon and in accordance with the recommendation of the State Central Committee of the party with which the

Delegate or Senator vacating his office had been affiliated, if there is such a Committee in the County or District from which he was elected. The appointee must be of the same political party as the former Senator or Delegate. Likewise, under Section 66 of Article 33 of the Code (1951), the appropriate State Central Committee is authorized to fill any vacancy among party nominees caused by the death or resignation of a candidate who has previously been nominated through a primary election or otherwise.

*County Commissioners for Montgomery County v. Supervisors of Elections of Montgomery County, supra,* and *Ames v. Board of Supervisors of Elections of Montgomery County,* 195 Md. 543, 74 A. 2d 29, show that the first election for members of a county council after the adoption of a charter stands on a different footing from subsequent elections because of the need for prompt action to avoid a lengthy interregnum, and hence the initial steps of creating a charter form of government are not dependent upon legislative action. The provision of Section 1103 of the Charter authorizing nominations by petitions "conforming with the requirements provided in Article 33, Section 44 of the * * * Code" stops at that point. It does not incorporate the provisions of Section 69 relating to petitions filed under Section 44. Plainly, we think, the Democratic State Central Committee was authorized by Section 1103 of the Charter to perform the same function with regard to party nominations as would ordinarily be performed by a party primary or by a nomination by convention or, indeed, by the Democratic State Central Committee itself under Section 66 of Article 33 of the Code if a vacancy should occur as to a nominee of that party after a nomination had been made by a primary election or by a convention. Though Section 69 of Article 33 does not expressly so provide, we should suppose that the same protection as to party designation which that Section confers upon persons nominated by a primary election or by a convention would extend to a candidate nominated by a State Central Committee under Section 66. The situation here presented is analogous to that dealt with by Section 66, since inability because of shortness of time to make a party nomi-

nation by a primary election or by a convention is common to both situations. Having in mind what we take to be the common purpose of Section 69 of Article 33 of the Code and of Section 1103 of the Baltimore County Charter to protect the official party designation of party candidates chosen by party procedures, we think the Board of Supervisors of Elections was warranted in refusing to place the appellants' names on the ballot with the party designation of "Democratic."

Being of the opinion that Section 1103 of the Charter of Baltimore County did confer upon the Democratic State Central Committee power to designate its nominees as the candidates of that party at the first election of members of the County Council and that such a provision was valid, we affirmed the order appealed from by a *per curiam* order.