## BLACK et al. *v.* BOARD OF SUPERVISORS OF ELECTIONS OF BALTIMORE CITY

[No. 62, September Term, 1963 (Adv.)]

(Two Appeals In One Record)

*Decided per curiam April 30, 1963.*

Opinion filed June 18, 1963.

76

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*H. Vernon Eney* and *Robert M. Thomas*, with whom were *Robert R. Bair, Charles B. Reeves, Jr., Joseph H. H. Kaplan* and *Venable, Baetjer & Howard* on the brief, for appellants.

*Thomas B. Finan, Attorney General,* and *Robert F. Sweeney, Assistant Attorney General,* for appellee.

PER CURIAM ORDER

## PER CURIAM ORDER OF COURT

For reasons to be stated in an opinion to be hereafter filed, this Court is of the opinion that the Order of the Superior Court of Baltimore City requiring the Respondents, the Board of Supervisors of Elections of Baltimore City, to remove the name of W. Rae Dempsey, Jr., as a candidate for election to the office of City Comptroller of Baltimore City at the municipal election to be held in said City on May 7, 1963, should be affirmed, and a majority of this Court being of the opinion that the Order of said Superior Court denying the petition insofar as it seeks to require the said Respondents to accept the nomination of Hyman A. Pressman as the candidate of the Republican Party for the office of City Comptroller should be reversed;

It is this 30th day of April, 1963, *ORDERED* by the Court of Appeals of Maryland:

(1) That the provisions of the Order of the Superior Court of Baltimore City, dated April 26, 1963, declaring the resignation of W. Rae Dempsey, Jr., as the candidate of the Republican Party for the office of City Comptroller of Baltimore City at the municipal election to be held in said City on May 7, 1963, to be valid, and directing that the writ of mandamus issue to require the deletion of his name as such candidate from all ballot labels and ballots to be used on voting machines and from all specimen ballots at said election, be and it is hereby affirmed;

(2) That the provisions of said Order of the Superior Court declaring that a vacancy has existed since the above resignation of the said W. Rae Dempsey, Jr., which can be filled by the nomination by action of an appropriate committee representing the Republican Party, of another qualified person as the candidate of said party for the office of City Comptroller of Baltimore City at said election, be and it is hereby affirmed; the question of which may be the appropriate committee having become moot by reason of an event below referred to and therefore not being decided; and

(3) That the portion of said Order of the Superior Court of Baltimore City which declares the Petitioner Hyman A. Pressman not to be qualified to be nominated as the candidate of the Republican Party for the office of City Comptroller of Baltimore City at said municipal election or to have his name appear on the ballot labels, ballots and specimen ballots to be used in the said election, be and it is hereby reversed;

(4) That, this Court being advised through counsel for the Petitioners, with the acquiescence of counsel for the Respondents, that the said Petitioner Hyman A. Pressman has this day been nominated as the candidate of the Republican Party for the office of City Comptroller of Baltimore City at said municipal election, by the Republican State Central Committee, as he had previously been nominated (as the record shows) by the Republican City Committee, the case is remanded to the Superior Court of Baltimore City with direc-

tions to order that the writ of mandamus be issued forthwith, to require the Respondents to list the name of the said Petitioner Hyman A. Pressman as the candidate of the Republican Party for the office of City Comptroller of Baltimore City on the ballot labels, ballots and specimen ballots to be used in said election;

(5) That the mandate of this Court be issued forthwith; and

(6) That the costs be paid by the Board of Supervisors of Elections of Baltimore City.

FREDERICK W. BRUNE
Chief Judge

HENDERSON, J., delivered the opinion of the Court.

On April 23, 1963, the appellants filed a petition seeking a writ of mandamus to require the Board of Supervisors of Elections of Baltimore City to delete from the ballot labels and specimen ballots the name of W. Rae Dempsey, Jr., as the candidate of the Republican party for the office of Comptroller of Baltimore City in the municipal election to be held on May 7, 1963, and also to list instead the name of Hyman A. Pressman as such candidate. The petition further sought a declaratory judgment that the resignation of Mr. Dempsey on April 22, 1963, as the candidate of the Republican party for such office in said election, was valid and effective, that the resignation created a vacancy, and that the Republican State Central Committee of Baltimore City lawfully nominated Mr. Pressman to fill such vacancy.

The Board of Supervisors answered the petition, the case was heard upon the petition and answer supplemented by a stipulation of facts, and on April 26, 1963, the court below declared that the Board of Supervisors had the duty to accept the resignation of Mr. Dempsey and delete his name, and that a vacancy existed to be filled by either the Republican State Central Committee or the Republican City Committee. He further declared, however, that Mr. Pressman was not qualified to be nominated as the candidate of the Republican party for the office of Comptroller of Baltimore City, because

he was a registered Democrat who had been an unsuccessful candidate for the Democratic nomination for the same office in the preceding primary election. Both sides appealed from these orders, we advanced the case for argument in this Court on April 29, 1963, and on April 30, 1963, we handed down a *per curiam* order affirming the provisions of the trial court's order as to the resignation of Mr. Dempsey and the creation of a vacancy. We held that the question as to whether the vacancy should be filled by the City or State Committee had become moot by reason of confirmatory action taken by the State Committee on April 30, 1963. We further held that the portion of the order declaring that Mr. Pressman was not qualified for the office should be reversed. We now state the reasons for our holdings in regard to the vacancy and Mr. Pressman's qualification to fill it.

It appears to be well settled that in the absence of a statutory prohibition against resignation a candidate has a natural or inherent right to resign at any time and to have his name deleted from the ballot. Another person may be named to fill the vacancy at any time when the change can be made without disrupting or interfering with the orderly progress of a general election. The general rule is well stated in 18 Am. Jur. *Elections,* § 127. The cases support the text. See *Introcaso v. Burke,* 65 A. 2d 786 (N. J.); *Bordwell v. Williams,* 159 Pac. 869 (Cal.); *Elswick v. Ratliff,* 179 S. W. 11 (Ky.); *State v. Hunt,* 81 P. 2d 883 (Wyo.); *State v. Annear,* 33 N. W. 2d 634 (Wis.). Even when one is elected, there is no restriction upon his right to decline the office simply by refusing to qualify. Illness or other causes may in fact require it in the public interest. It was not seriously contended that the time remaining after the resignation, which was 16 days before the election date, was too short to permit the vacancy to be filled and the appropriate changes made on the voting machines and ballots.

The cross-appellants rely upon Code (1957), Art. 33, sec. 73 (a), which provides: *"General election.*—Whenever any person nominated for public office as in this article provided shall, at least 65 days before election, in a writing signed by

him or her and acknowledged * * *, notify the officer with whom the certificate nominating him is required to be filed by this article, that he or she declines such nomination, such nomination shall be void; and the name of any person so withdrawing shall not be printed upon the ballots." But sec. 62 (b) provides that the primary election shall be held "nine weeks or sixty-three days prior to the Tuesday next after the first Monday in May of the year in which the municipal elections in the City of Baltimore are to be held." Inasmuch as Mr. Dempsey did not become "nominated for public office" until 63 days before the scheduled municipal election, manifestly he had no opportunity to decline the nomination at least 65 days before the election.

We think section 73 (a) does not apply to municipal elections in Baltimore City for several reasons. It can hardly be supposed that the legislature intended to impose a mandatory time limitation that could not possibly be met. Cf. *Foxwell v. Beck,* 117 Md. 1, 8. Moreover, a construction that would, in effect, deprive the voters of a right to vote for a candidate who is willing to accept the office, should not be favored. Cf. *Jackson v. Norris,* 173 Md. 579, 599, *Kemp v. Owens,* 76 Md. 235, 241 and *Hill v. Town of Colmar Manor,* 210 Md. 46, 57. The courts in other states have generally held that time limitations imposed upon a right to withdraw are directory and not mandatory. See *State v. Tallman,* 143 Pac. 874 (Wash.); *State v. Dewey,* 102 N. W. 1015 (Neb.); *In Re Substitute Nomination for Vacancy, Etc.,* 118 A. 2d 750 (Pa.). We need not go so far in the instant case. We simply hold that the time limitation is inapplicable in a case where it clearly cannot apply.

We also agree with the trial court that the resignation created a vacancy. The cross-appellants' theory seems to be that even if Mr. Dempsey had a right to resign, there is a gap in the statutory authority. Section 74 (a) provides: *"Manner.—* Should any person so nominated die before election day or decline the nomination, as in this subtitle provided, or should any certificate of nomination be or become insufficient or inoperative from any cause occurring after the period of time

for the filling of vacancies in party nominations as is prescribed by § 56 of this article, the vacancy or vacancies thus occasioned shall be filled in the manner prescribed as hereinafter set forth." (The applicable reference here is to § 75, which authorizes the State or local central committee to fill local vacancies). The cross-appellants read the language as to the certificate of nomination becoming "insufficient or inoperative from any cause" as confined to technical deficiencies in the certificate itself. We find no support for the argument in *Rasin v. Leaverton,* 181 Md. 91, 96, but quite the contrary. See also *Graham v. Wellington,* 121 Md. 656. As noted in *Pumphrey v. Stockett,* 187 Md. 318, 321, section 74 (a) was amended by the legislature after the decision of this Court in the *Rasin* case, but the legislature did not attempt to alter or restrict the broad language used, but merely made the clause inapplicable to cases arising prior to 15 days before the primary election under § 56. We think the phrase "from any cause" would be rendered meaningless by the construction contended for. Finally, we think the language of § 274, in regard to write-in votes on absentee ballots, clearly contemplates and covers a situation where a candidate withdraws within a period of 50 days prior to the general election. The language not only covers vacancies by reason of death, but specifically refers to any candidate who "shall decline to be, or continue as, a candidate, or if a vacancy occurs from any other cause * * *." The clear implication is both that a candidate may withdraw within the 65-day period mentioned in § 73 (a) and that another candidate may be selected to fill the vacancy.

The more difficult question in the case is whether the Republican State Central Committee (State or local) is precluded from selecting a registered Democrat to fill the vacancy and particularly one who was an unsuccessful candidate for the office on the Democratic ticket in the primary election. It seems clear that prior to the adoption of the Australian ballot law in 1890, "parties were free to nominate their candidates in any way they saw fit, and it was usual to do it, in the case of the larger parties, by unofficial primaries which sent delegates to conventions where the nominations were made." *Munsell*

*v. Hennegan,* 182 Md. 15, 19. After 1890, the law has provided three methods of nomination. See § 54. But the adoption of the Australian ballot and the primary election laws did not prevent a party from nominating a member of another party as its candidate. See *Fisher v. Dudley,* 74 Md. 242 (1891), and *German v. Sauter,* 136 Md. 52. It was not until 1922 that the legislature sought to impose any limitation. It was then provided, in what is now Code (1957), Art. 33, sec. 67 (d), that a losing candidate in a primary election could not thereafter be nominated by petition. The section is now meaningless because § 67 (b) provides that nominations by petition must be at least 15 days before the date set by law for the primary election.

In 1943, the legislature enacted what is now Code (1957), Art. 33, sec. 60, providing, in effect (except as to nominations for judicial office) that persons seeking nomination in primary elections must be affiliated on the registration book with the party whose nomination he seeks. This statute was sustained in *Hennegan v. Geartner,* 186 Md. 551. See also the article on party-raiding statutes in 47 Col. L. Rev. 1207. It seems clear, however, that there is no Maryland statute that limits the right of a party central committee to select a candidate of another party to fill a vacancy, in the exercise of the broad powers conferred by Code (1957), Art. 33, sec. 81. The complete absence of limitation on the power to fill vacancies conferred by §§ 74 (b), 75 and 56 (c), may be contrasted with the limitation contained in Art. III, sec. 13 of the Maryland Constitution. See *Tyler v. Board of Supervisors,* 213 Md. 37.

We have been referred to only one case in which a court has held that a statute requiring party affiliation for candidates in primary elections is, by implication, a bar to the nomination of a defeated candidate of the other party in the event of a vacancy. That case is *Francis v. Sturgill,* 174 S. W. 753 (Ky.). It has been qualified or ignored in later cases, see *Napier v. Roberts,* 189 S. W. 206 (Ky.) and *Broughton v. Pursifull,* 53 S. W. 2d 200 (Ky.). The matter is now controlled by statute. See *Mullins v. Jackson,* 109 S. W. 2d 387 (Ky.) and *Rosenberg v. Queenan,* 261 S. W. 2d 617 (Ky.).

The case of *Stevenson v. Gilfert,* 100 A. 2d 490 (N. J.), relied on by the appellees, is distinguishable for there the matter was controlled by the express terms of the New Jersey statute. We may note that Chief Justice Vanderbilt and Justice Oliphant dissented. *Sadloch v. Allan,* 135 A. 2d 173 (N. J.), is to the same effect. On the other hand, there are a host of cases refusing to draw the implication. See *Martonick v. Beattie,* 117 A. 2d 715 (Pa.); *Sutphen v. Enking,* 230 Pac. 38 (Ida.); *George v. Board of Ballot Com'rs.,* 90 S. E. 550 (W. Va.); *State v. Seibel,* 171 S. W. 69 (Mo.); *State v. Tipton,* 199 P. 2d 463 (Kan.); *People v. Smith,* 43 N. W. 2d 871 (Mich.); *In Re Callahan,* 93 N. E. 262 (N. Y.); *Shaffer v. Jordan,* 213 F. 2d 393 (9th cir.).

Fundamentally, the appellees' contention, like the reasoning of the Kentucky Court in the *Sturgill* case, is based on the argument that it is repugnant to public policy to allow a switch of party allegiance after the battle lines are drawn. The argument, we think, confuses party policy with public policy. The latter may well be best served by permitting the widest latitude of selection. The appellees seem to concede that Mr. Pressman would not have been ineligible as a write-in candidate. In any event, we think the wisdom or expediency of the matter is for the legislature and not for the Courts.

MARBURY, J., filed the following dissenting opinion, in which PRESCOTT and SYBERT, JJ., concurred.

I agree with the majority that Mr. Dempsey could resign his nomination as Republican candidate for the office of Comptroller of Baltimore City, and that there was a vacancy on the ballot as to the Republican nominee for that office. I do not agree that Mr. Pressman, the unsuccessful Democratic candidate in the primary for this elective position, could be nominated by the Republican State, or City, Committee to run on the Republican ticket against the very man that defeated him in the Democratic primary.

The case of *Francis v. Sturgill* (Ky.), 174 S. W. 753, presented the exact question that is now before this Court. Francis and Sturgill were both candidates for the Democratic nomination for County Court Clerk, and Francis was the vic-

tor in the primary election. Subsequent to the primary, the successful Republican candidate withdrew and the Republican County Committee selected Sturgill to fill the vacancy, although Sturgill was still a registered Democrat. Sturgill won the election, and Francis moved to have his election set aside. Kentucky had no statute expressly requiring that a person selected to fill a vacancy in nomination be a member of the party selecting him, but it did have a requirement similar to Code (1957), Article 33, § 60, that a candidate for nomination in a primary election must be affiliated with the party whose nomination he seeks. In reversing the lower court, the Kentucky Court of Appeals held that the election of Sturgill must be set aside. The Court stated at page 757:

> "The primary election law of this state does not, it is true, expressly provide that a candidate who suffers defeat for a nomination after permitting his name to go on the party ballot shall not be permitted to have it placed on the ballot at the regular election as a candidate, whether of another party or as an independent, but its provisions, by necessary implication, mean and declare that his name in such state of case shall not be placed on the ballot for the regular election as the nominee and under the device of a party opposing the party whose nomination he sought and was refused at the primary; and to hold otherwise would utterly defeat the object designed in the enactment of the primary election law and make of it a farce. It is our conclusion, therefore, that as the provisions of the primary election law would have excluded appellee, a member of the Democratic party, from procuring the placing of his name on the Republican ballot at the primary as a candidate for the nomination of the party to the office of county court clerk of Knott county, he was not, after his defeat in the primary for the Democratic nomination for the office in question, eligible to nomination therefor by the Republican committee of Knott county, and, therefore, that the action of the committee making him the

nominee of the Republican party and causing his name to be placed on the ballot for the regular election as such, under the device of the Republican party, was without authority and void."

I disagree with the majority opinion that that decision has been qualified or ignored in those later cases cited by the majority. The Kentucky Court of Appeals was never faced with a later question involving the same situation. Kentucky has since enacted statutes that codify the decision in *Francis* so as to do by legislative enactment that which was done by the decision in that case.

The situation in Maryland now is nearly the same as that which existed in Kentucky at the time of *Francis*. There is no specific statute to prevent Pressman from running as Republican nominee for comptroller. However, the tenor of the Maryland election laws makes it evident that

"* * * it is improbable of belief that the Legislature could have contemplated that one who seeks, in a primary election, as did appellee, the nomination of his party for office, against another of like political faith, would, after suffering defeat at the hands of his opponent, have the right at the regular election to seek election to the same office against such opponent by procuring at the hands of the committee of an opposing party, the placing of his name on the ballot under its device as its nominee. Such a method of securing a party nomination is not consonant with good faith or fair dealing, and its approval by us would defeat the paramount object of the primary law and destroy its efficiency. * * *"

*Francis v. Sturgill, supra,* at page 756.

The cases relied upon by the majority as refusing to draw an implication that an unsuccessful candidate in one party primary may not be eligible to become the candidate of another party are, it seems to me, distinguishable on the facts involved or were governed by statute in the respective states.

There are inherent dangers in a result such as that reached

in the majority opinion. It is not inconceivable that it could result in pre-arranged "deals" between unscrupulous aspirants to political office and bring about a new hidden form of cross-filing for non-judicial elective offices, which can only result in detriment to the electorate and advantage to professional self-seeking politicians. Whether the views expressed by the majority opinion involve public policy or party policy, it seems clear that the holding of the majority runs counter to patent legislative intent in enacting primary election laws, as well as common sense. The situation now under the majority holding is the converse of that which existed in Kentucky after the decision in *Sturgill*, and may well call for consideration by the Maryland Legislature. I might add that in Maryland, as in most other states, the Legislature has enacted laws regulating party primary elections so that it may be said that there is no distinction in this field between public policy and party policy. To all intents and purposes they have become merged.

In addition to the provisions of Art. 33, § 60, *supra*, the Legislature has provided, by Code (1957), Art. 33, § 67 (d), that no person who has been a candidate for nomination by a political party at a primary shall be nominated for an office to be filled at the following general election by petition. I think that by these statutes the Legislature has established the policy that an unsuccessful candidate in a primary simply may not be a candidate in the succeeding general election, especially against the same man who defeated him in the primary.

Judges Prescott and Sybert authorize me to say that they concur with the views here expressed.