421 S.E.2d 698

**STATE of West Virginia ex rel. Samuel A. CRAVOTTA, et al., Relators**

v.

**Ken HECHLER, as Secretary of State and as a Member of the State Election Commission; Allan S. Hammock, Barbara Ruley, Becky Cain, and Gary A. Collias, Members of the State Election Commission; Bob Wise; and the State Election Commission, Respondents**

No. 21308.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 1, 1992.

Decided Sept. 2, 1992.

---

Victor A. Barone, Hurt & Barone, Charleston, for relators.

Michael J. Basile, Asst. Atty. Gen., Charleston, A. Renee Coe, Deputy Secretary of State, Special Asst. Atty. Gen., Charleston, for respondents.

MILLER, Justice:

In this original mandamus proceeding, the relators challenge the respondents' refusal, under W.Va.Code, 3–5–19(a)(5) (1991), to permit them to fill a ballot vacancy caused by the withdrawal of a candidate after the primary election.

### I.

The facts can be briefly stated. In a letter dated June 30, 1992, the Republican candidate for the United States House of Representatives for the Second Congressional District, Ron P. Foster, advised the Secretary of State, Ken Hechler, that he wished to withdraw as a candidate:

"Due to personal family committments [*sic*] it would be impossible for me to serve in the U.S. House of Representatives in the event that I am elected. I cannot serve the people and fullfill [*sic*] my obligations to my children at the same time.

"I ask that you withdraw my name from November 3rd ballot due to my inability to serve in the 2nd District office."

Thereafter, on July 22, 1992, Mr. Foster advised the State Election Commission (the Commission)[1] that he wanted the Republican Executive Committee for the Second Congressional District (the Executive Committee), or its chairman, to select a candidate to fill the vacancy. The procedure to fill such a vacancy is spelled out in W.Va. Code, 3–5–19(a)(5).[2]

On July 24, 1992, the Commission met to consider Mr. Foster's request. The bipartisan Commission determined that Mr. Foster should be permitted to withdraw, but refused to authorize the Executive Committee to appoint a successor because Mr. Foster had not shown "extenuating personal circumstances" as required by W.Va.Code, 3–5–19(a)(5).

Thereafter, on August 11, 1992, the Executive Committee met and selected Samuel A. Cravotta to fill the vacancy created by the withdrawal of Mr. Foster. This appointment was filed with the respondent Secretary of State, who took no action on it in the belief that Mr. Foster had not shown sufficient extenuating personal circumstances. Subsequently, the relators filed this mandamus action.

## II.

The relators' argument is centered on the meaning of the phrase "extenuating personal circumstances." We see the critical issue somewhat differently. The undeniable fact is that the Commission has authorized and accepted Mr. Foster's withdrawal. If the Commission had rejected his withdrawal on the theory that he had not shown "extenuating personal circumstances," then the issue would be whether the reasons advanced by Mr. Foster for his withdrawal met this standard.

W.Va.Code, 3–5–19 (1991), as well as its predecessor, demonstrates a legislative policy to permit vacancies for public office to be filled after the primary election in order that voters can fully exercise their right to choose elected officials from a complete slate of candidates. This policy was stated in *State ex rel. Revercomb v. O'Brien*, 141 W.Va. 662, 673, 91 S.E.2d 865, 872 (1956): "We believe it to be the policy of the lawmakers of this State to permit the voters generally to participate in the selection of candidates for all offices in primary elections whenever possible[.]"

■ The legislative policy to afford voters as full a ballot as possible has created a companion principle that a vacancy selection statute should be liberally construed. As we stated in *State ex rel. Lockhart v. Rogers*, 134 W.Va. 470, 477, 61 S.E.2d 258, 262 (1950): "We are of opinion that a liberal application of any statute should be made so as to afford the citizens of this State or any political subdivision thereof an opportunity to vote for persons of their choice."

These policies are followed in other jurisdictions, as recognized by the New Jersey Supreme Court in *Catania v. Haberle*, 123 N.J. 438, 442–43, 588 A.2d 374, 376 (1990):

"The general rule applied to the interpretation of our election laws is that

1. The Commission was created in 1974 and is composed of the Secretary of State and four persons appointed by the Governor. W.Va. Code, 3–1A–1, *et seq.*

2. W.Va.Code, 3–5–19(a)(5), provides:

"If any vacancy shall occur in the party nomination of candidates for office nominated at the primary election or by appointment under the provisions of section eleven [§ 3–5–11] of this article, the vacancies may be filled, subject to the following requirements and limitations:

\* \* \* \* \* \*

"(5) *If a vacancy in nomination is caused by the withdrawal of the candidate* no later than ninety-eight days *before the general election*

*due to extenuating personal circumstances which will prevent the candidate from serving in the office* if elected, and if the candidate or the chairperson of the executive committee for the political division applies in writing to the state election commission no later than ninety-five days before the general election for permission to fill the vacancy, the state election commission shall review the reasons for the withdrawal. If the commission finds the circumstances warrant the withdrawal of the candidate, the commission may authorize appointment by the executive committee to fill the vacancy, upon which authorization a nominee may be appointed by the executive committee and certified to the proper filing officer no later than seventy-eight days before the general election." (Emphasis added).

absent some public interest sufficiently strong to permit the conclusion that the Legislature intended strict enforcement, statutes providing requirements for a candidate's name to appear on the ballot will not be construed so as to deprive the voters of the opportunity to make a choice." (Citation omitted).

*See Slocum v. DeWitt,* 374 So.2d 755 (La. App.), *writ denied,* 375 So.2d 1182 (La. 1979); *In re Johnson,* 509 Pa. 347, 502 A.2d 142 (1985).

Thus, we conclude that our statutes relating to vacancies on an election ballot ordinarily should be liberally construed in order to serve the legislative policy of providing a full selection of candidates for the voters.

### III.

The parties have not cited, and we have not found, any election cases that have considered the particular factual pattern that exists here. W.Va.Code, 3–5–19(a)(5), deals solely with a candidate's withdrawal due to extenuating personal circumstances and does not address vacancies created as a result of the disqualification, incapacity, or death of a candidate after the primary election. These latter situations are covered under W.Va.Code, 3–5–19(a)(4) and (6).

Withdrawal by a candidate after the primary election under W.Va.Code, 3–5–19(a)(5), requires that the request to withdraw be sent to the Commission within the prescribed time period.[3] The Commission must then "review the reasons for the withdrawal." If the Commission finds that circumstances warrant the withdrawal of the candidate, the Commission should permit the withdrawal and "authorize appoint-

ment [of a replacement candidate] by the executive committee[.]"

■ The Commission's position is that even though it permitted Mr. Foster to withdraw his candidacy, there were no extenuating personal circumstances justifying the withdrawal. Consequently, it refused to authorize the Executive Committee to fill the vacancy. In note 1 of its response, the Commission asserts that "[a]ny candidate may withdraw from a race."[4] No authority is given for this statement, and it contradicts the general rule stated in 25 Am.Jur.2d *Elections* § 134 (1966):

"In the absence of statutory inhibition, a candidate has a natural or inherent right to resign at any time and to have his name deleted from the ballot. This right, however, must give way to reasonable legislative restrictions and to overriding public considerations in any circumstances where to accord the right of withdrawal would be inimical to the public interest." (Footnotes omitted).

*See also Clark v. Patterson,* 68 Cal.App.3d 329, 137 Cal.Rptr. 275 (1977); *Black v. Board of Supervisors of Elections,* 232 Md. 74, 191 A.2d 580 (1963); *Introcaso v. Burke,* 3 N.J.Super. 276, 65 A.2d 786 (1949); *In re Petition of Dietterick,* 136 Pa.Commw. 66, 583 A.2d 1258 (1990).

■ We decline to adopt the Commission's reasoning simply because it does not comport with the pertinent statutory language. W.Va.Code, 3–5–19(a)(5), allows a withdrawal if the "commission finds the circumstances warrant the withdrawal." If the Commission felt Mr. Foster's reasons were not sufficient to constitute "extenuating personal circumstances," it should have refused his attempted withdrawal.[5] How-

---

**3.** The withdrawal must be no later than ninety-eight days before the general election. *See* note 2, *supra.* This time period was met in this case.

**4.** The remaining portion of note 1 from the respondents' response is as follows:

"The State Election Commission only has responsibility for deciding whether or not a substitute nominee may be appointed. Because the Commission ruled that Foster did not withdraw for extenuating personal circumstances that would prevent him from

serving if elected, the Second Congressional District Republican Executive Committee did not have the authority to appoint Petitioner Cravotta as a substitute nominee. Cravotta's appointment is invalid unless this Court reverses or sets aside the Commission's decision regarding Foster's withdrawal."

**5.** On the other hand, in view of the general rule that favors a candidate's right to withdraw, it would appear that the term "extenuating personal circumstances" should be liberally construed in favor of the candidate.

ever, we do not believe that the Commission can accept a candidate's withdrawal and then refuse to authorize the Executive Committee to fill the vacancy created.[6]

The Commission's action has left the ballot slot vacant. There is no other provision in our election law that would apply to filling the vacancy. The Commission has frustrated the legislative procedure by refusing to authorize the Executive Committee to make the appointment.

■ The Commission does not argue that it need not authorize the appointment by the Executive Committee because of the use of the word "may" in the phrase "the commission may authorize appointment by the executive committee." *See* W.Va.Code, 3–5–19(a)(5). Even if this argument had been made, it would fail because the word "may" was used to address the situation where a candidate desires to withdraw, but "the candidate or the chairperson of the executive committee for the political division [does not] appl[y] in writing to the state election commission ... for permission to fill the vacancy[.]" W.Va.Code, 3–5–19(a)(5). Where there is a failure to apply to fill the vacancy, or where the application is untimely, the Commission is under no duty to authorize the executive committee to fill the vacancy.[7]

Here, a timely request was made to fill the vacancy, and we do not believe that, under the circumstances, the Commission could refuse to authorize the Executive Committee to appoint a replacement candidate. Thus, we conclude that where the Commission has authorized a candidate to withdraw under W.Va.Code, 3–5–19(a)(5), the Commission must authorize the appropriate executive committee to fill the vacancy on timely request by the candidate or the chairman of such executive committee.

## IV.

We have traditionally recognized that mandamus is a proper remedy to compel a public official to comply with a duty imposed by our election laws. As we stated in Syllabus Point 1 of *MacCorkle v. Hechler,* 183 W.Va. 105, 394 S.E.2d 89 (1990):

" 'Mandamus is the proper remedy in this State to compel any officer or person to perform any duty which he is required to perform under the election laws of this State.' Syl. pt. 1, *Benson v. Robertson,* 159 W.Va. 674, 226 S.E.2d 447 (1976)." [8]

Consequently, we conclude that the Commission, as the public body charged under W.Va.Code, 3–5–19(a)(5), with authorizing the appropriate executive committee to fill a vacancy upon the withdrawal of a candidate, should be compelled to accept the appointment of Samuel A. Cravotta as Republican candidate for the United States House of Representative for the Second Congressional District. For the foregoing reasons, the writ of mandamus is awarded.

Writ awarded.

---

**6.** If a timely request has not been made to fill the vacancy by the involved executive committee, then the Commission need not authorize such request. W.Va.Code, 3–5–19(a)(5).

**7.** W.Va.Code, 3–5–19(a)(5), requires that the request to fill the vacancy be made "no later than ninety-five days before the general election[.]" *See* note 2, *supra.*

**8.** In *Benson,* 159 W.Va. at 677, 226 S.E.2d at 450, the Court cited W.Va.Code, 3–1–45 (1963), which states, in relevant part: "Any officer or person, upon whom any duty is devolved by this chapter, may be compelled to perform the same by writ of mandamus."