# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**STATE OF WEST VIRGINIA EX REL.
MARIE MCDAVID AND
KANAWHA COUNTY REPUBLICAN
EXECUTIVE COMMITTEE,
Petitioners**

**vs.) No. 14-0939**

**NATALIE TENNANT,
AS SECRETARY OF STATE AND
AS A MEMBER OF THE STATE ELECTION COMMISSION;
DR. ROBERT RUPP, GARY COLLIAS,
TAYLOR DOWNS, AND VINCENT CARDI,
AS MEMBERS OF THE STATE ELECTION COMMISSION;
AND THE STATE ELECTION COMMISSION,
Respondents**

**THE WEST VIRGINIA STATE DEMOCRATIC
EXECUTIVE COMMITTEE,
Intervenor**

**FILED**

October 1, 2014

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners, Marie McDavid and the Kanawha County Republican Executive Committee (collectively, "the Republican Committee"),[1] invoke this Court's original jurisdiction seeking a writ of mandamus to compel respondents, West Virginia Secretary of State Natalie Tennant and the State Election Commission, and its individual members[2]

---

[1]The petitioners herein are represented by counsel Mark A. Carter and J. Mark Adkins.

[2]Secretary of State Natalie Tennant was named as a respondent both in her elected capacity and as a member of the State Election Commission. Additional individual members of the Commission named as respondents herein are Dr. Robert Rupp, Gary Collias, Taylor

(collectively, "the Commission"),[3] to permit the Republican Committee to fill a vacancy on the November 2014 General Election ballot.[4] The vacancy in question occurred when Delegate Suzette Raines ("Delegate Raines") withdrew her candidacy for the 35th District of the West Virginia House of Delegates citing "extenuating personal circumstances." *See* W. Va. Code § 3-5-19(a)(6) (2007) (Repl. Vol. 2013) (governing filling of vacancy caused by candidate's withdrawal "due to extenuating personal circumstances").

Upon our review of the parties' briefs and oral arguments, the appendix records designated for our consideration, and the pertinent authorities, we find that the Republican Committee has demonstrated sufficient grounds to warrant issuance of the requested writ of mandamus. Because this case does not present any new or significant questions of law, we find disposition through a memorandum decision to be proper as contemplated by Rule 21 of the West Virginia Rules of Appellate Procedure.

By way of background, an election ballot vacancy may occur for a variety of reasons, including a candidate's withdrawal as in the case *sub judice*. *See generally* W. Va. Code § 3-5-11 (2005) (Repl. Vol. 2013) (referencing candidate's statement of withdrawal); W. Va. Code § 3-5-19 (listing reasons for withdrawal and explaining procedures therefor). When a candidate wishes to withdraw his/her candidacy, he/she must file a formal statement of withdrawal: "[a] candidate who has filed a certificate of announcement and wishes to withdraw and decline to stand as a candidate for the office shall file a signed and notarized statement of withdrawal with the same officer with whom the certificate of announcement was filed." W. Va. Code § 3-5-11(a). While a withdrawing candidate is not always automatically entitled to have his/her name removed from the election ballot, depending upon when he/she tenders his/her statement of withdrawal, the Legislature nevertheless has recognized the importance of having an accurate list of names on an election ballot. *Compare* W. Va. Code § 3-5-11(a) ("If the statement of withdrawal is received not later than the third Tuesday following the close of candidate filing, the name of a candidate who files

---

Downs, and Vincent Cardi. *See* W. Va. Code § 3-1A-1 (2010) (Repl. Vol. 2013) ("The 'State Election Commission,' heretofore created, is continued and is composed of the Secretary of State, and four persons appointed by the Governor, by and with the advice and consent of the Senate. . . .").

[3]The respondents herein are represented by West Virginia Attorney General Patrick Morrisey; Senior Deputy Attorney General Katherine A. Schultz; Deputy Attorney General Laura J. Young; and Assistant Attorney General Jennifer S. Greenlief.

[4]Also appearing in this case, as an intervenor, is the West Virginia State Democratic Executive Committee, which is represented by counsel Marvin W. Masters, Kimberly K. Parmer, and Christopher J. Regan.

that statement of withdrawal may not be printed on the ballot. No candidate who files a statement of withdrawal after that time may have his or her name removed from the ballot.") *with* W. Va. Code § 3-5-18 (2005) (Repl. Vol. 2013) ("The Secretary of State shall certify, under the seal of the state, to the clerk of the county commission of each county in which a candidate is to be voted for, the name of the candidate of each political party receiving the highest number of votes in the political division in which he or she is a candidate, and who is entitled to have his or her name placed on the official ballot in the general election as the nominee of the party for such office. The Secretary of State shall also certify in the same manner the names of all candidates nominated by political parties or by groups of citizens, not constituting a political party, in any manner provided for making such nominations in this chapter."). *See also* W. Va. Code § 3-6-2(a)(3) (2007) (Repl. Vol. 2013) (requiring "[a]ll [general election] ballots prepared under the provisions of this section are to contain: . . . [t]he names of every candidate for any office to be voted for at the election whose nomination in the primary election, nomination by petition or nomination by appointment to fill a vacancy on the ballot has been certified and filed according to law and no others"); West Virginia Secretary of State Natalie E. Tennant, *2014 Election Calendar* 28 (rev. Oct. 25, 2013) (listing August 19 - 25, 2014, as the dates during which "Secretary of State Certifies Names").

Pursuant to W. Va. Code § 3-5-19(a)(6), a successful primary election candidate may withdraw his/her candidacy for office in the general election based upon "extenuating personal circumstances"; if the Commission accepts the candidate's withdrawal, a replacement candidate may be appointed:

(a) If any vacancy occurs in the party nomination of candidates for office nominated at the primary election or by appointment under the provisions of section eleven [§ 3-5-11] of this article, the vacancies may be filled, subject to the following requirements and limitations:

. . . .

(6) If a vacancy in nomination is caused by the withdrawal of the candidate no later than eighty-four days before the general election due to extenuating personal circumstances which will prevent the candidate from serving in the office if elected and if the candidate or the chairperson of the executive committee for the political division applies in writing to the State Election Commission no later than eighty-four days before the general election for permission to remove the candidate's name from the general election ballot, the State Election Commission shall review the reasons for the request. If the commission finds the circumstances warrant the withdrawal of the candidate, the commission shall authorize appointment by the executive

3

committee to fill the vacancy. Upon receipt of the authorization, a nominee may be appointed by the executive committee and certified to the proper filing officer no later than seventy-eight days before the general election.

W. Va. Code § 3-5-19(a)(6). In accordance with this statutory provision, Delegate Raines, on August 11, 2014, tendered her notice of withdrawal as a candidate for the West Virginia House of Delegates 35th District citing extenuating personal circumstances related to the death of her mother; the termination of a personal relationship; and the financial, medical, and emotional burdens occasioned by these two occurrences.[5] By letter dated August 12, 2014, the Republican Committee requested permission "to appoint a replacement whose name will appear on the November 2014 ballot" to fill the vacancy created by Delegate Raines' withdrawal.[6]

Thereafter, on August 13, 2014, the Commission held an emergency meeting regarding Delegate Raines' request to withdraw and the Republican Committee's request to appoint a replacement candidate. However, instead of first determining whether Ms. Raines' request to withdraw based upon "extenuating personal circumstances" should be granted, the Commission acknowledged that Delegate Raines had, in fact, withdrawn and that her name would not appear on the November 2014 General Election ballot. The Commission's minutes[7] of its August 13, 2014, meeting also reflect its recognition of Delegate Raines' withdrawal: "[Assistant Legal Counsel] Mr. Leach informed the commission that the Secretary of State's office has received a formal notice of withdraw [sic] from Suzette Raines, a Republican candidate from the 35th House of Delegates District *who has withdrawn from the 2014 General Election ballot.*" (Emphasis added). The Commission then proceeded to determine whether "extenuating personal circumstances" existed so as to permit the Republican Committee to appoint a replacement. Following discussion and hearing public comments, the Commission determined that the cited reasons for Delegate Raines'

---

[5]Delegate Raines' "Notice of Withdrawal of Candidacy" was timely filed insofar as the Secretary of State's 2014 Election Calendar established August 12, 2014, as the "Deadline for Candidate to Withdraw Because of Extenuating Circumstances, Disqualification or Incapacity." *See also* W. Va. Code § 3-5-19(a)(6) (2007) (Repl. Vol. 2013) (providing date by which candidate must file notice of withdrawal due to "extenuating personal circumstances").

[6]The Republican Committee's request to appoint a replacement candidate also was timely filed. *See id.*

[7]*See generally* W. Va. Code § 3-1A-5(b)(7) (2013) (Repl. Vol. 2013) (charging State Election Commission with duty "[t]o keep minutes of the transactions of each meeting of the commission").

withdrawal did not constitute "extenuating personal circumstances" and, therefore, denied the Republican Committee's request to appoint a replacement.[8]

In spite of the Commission's failure to authorize the Republican Committee's appointment of a candidate to fill the vacancy caused by Delegate Raines' withdrawal, the Republican Committee nevertheless submitted an "Appointment by Executive Committee To Fill Vacancy on the General Election Ballot" form naming petitioner Marie Sprouse-McDavid ("Ms. McDavid") as its candidate to fill the noted vacancy. The Republican Committee timely filed this form with the Secretary of State's office on August 18, 2014.[9] On this same date, Ms. McDavid also timely filed her "Candidate's Certificate of Announcement for 2014 Elections" as the Republican Committee's candidate chosen to fill said vacancy and tendered the appropriate filing fee.[10] By letter dated August 19, 2014, the Secretary of State's office, through its Director of Elections, notified Ms. McDavid that "we cannot process [your candidacy paperwork] at this time as the executive committee has not been given the authority to fill the vacancy." In response to the Secretary of State's rejection of its candidate appointment, the Republican Committee, on August 22, 2014, provided a "Notice of Claim Against State" to respondents and the Attorney General as required by W. Va. Code § 55-17-3(a)(1) (2008) (Repl. Vol. 2008).[11] In summary, the notice detailed the

---

[8]The transcript of this meeting further indicates that the Commission previously has interpreted "extenuating personal circumstances" as constituting a high standard, having found such circumstances to exist in the case of a candidate's heart attack or death.

[9]Pursuant to the Secretary of State's 2014 Election Calendar, August 18, 2014, was the deadline for "Executive Committee or Chair Appointment to Fill Vacancy." *See also* W. Va. Code § 3-5-19(a)(6) (providing date by which executive committee must appoint replacement candidate).

[10]*See id.*

[11]W. Va. Code § 55-17-3(a)(1) (2008) (Repl. Vol. 2008) requires:

Notwithstanding any provision of law to the contrary, at least thirty days prior to the institution of an action against a government agency, the complaining party or parties must provide the chief officer of the government agency and the Attorney General written notice, by certified mail, return receipt requested, of the alleged claim and the relief desired. Upon receipt, the chief officer of the government agency shall forthwith forward a copy of the notice to the President of the Senate and the Speaker of the House of Delegates. The provisions of this subdivision do not apply in actions seeking injunctive relief where the court finds that irreparable harm would have

Republican Committee's intent to seek a writ of mandamus to compel "the Secretary of State to certify Ms. Sprouse-McDavid as a nominee of the Republican Party for the 35th House District on the November 2014 General Election Ballot." Upon the expiration of the statutory notice period, petitioners filed the instant petition for writ of mandamus with this Court.

The relief requested by the Republican Committee herein is a writ of mandamus to compel the Commission to permit the Republican Committee to fill a vacancy on the November 2014 General Election ballot occasioned by Delegate Raines' withdrawal due to extenuating personal circumstances. We previously have held that

> "'[m]andamus is the proper remedy in this State to compel any officer or person to perform any duty which he is required to perform under the election laws of this State.' Syl. pt. 1, *Benson v. Robertson*, 159 W. Va. 674, 226 S.E.2d 447 (1976)." Syllabus Point 1, *MacCorkle v. Hechler*, 183 W. Va. 105, 394 S.E.2d 89 (1990).

Syl. pt. 4, *State ex rel. Cravotta v. Hechler*, 187 W. Va. 790, 421 S.E.2d 698 (1992). Nevertheless,

> [b]efore this Court may properly issue a writ of mandamus three elements must coexist: (1) the existence of a clear right in the petitioner to the relief sought; (2) the existence of a legal duty on the part of the respondent to do the thing the petitioner seeks to compel; and (3) the absence of another adequate remedy at law.

Syl. pt. 3, *Cooper v. Gwinn*, 171 W. Va. 245, 298 S.E.2d 781 (1981).

In the case *sub judice*, the sole issue presented for this Court's resolution is whether the Republican Committee may appoint a candidate to fill the vacancy caused by Delegate Raines' withdrawal as a candidate for the 35th District of the West Virginia House of Delegates based upon extenuating personal circumstances. Determinative of this issue is the legislative language governing candidate withdrawals due to "extenuating personal circumstances," which states, in pertinent part:

> If a vacancy in nomination is caused by the withdrawal of the candidate . . . due to extenuating personal circumstances which will prevent the

---

occurred if the institution of the action was delayed by the provisions of this subsection.

6

candidate from serving in the office if elected and if the candidate or the chairperson of the executive committee for the political division applies in writing to the State Election Commission . . . for permission to remove the candidate's name from the general election ballot, *the State Election Commission shall review the reasons for the request. If the commission finds the circumstances warrant the withdrawal of the candidate, the commission shall authorize appointment by the executive committee to fill the vacancy.*

W. Va. Code § 3-5-19(a)(6) (emphasis added).

With respect to statutes governing elections generally, we previously have held that "[e]lection laws are statutory and where clear and unambiguous require no construction by the Court." Syl. pt. 1, *State ex rel. Holt v. Davis*, 156 W. Va. 269, 197 S.E.2d 100 (1972). As to legislation governing the filling of nomination vacancies specifically, such as the provision governing the instant proceeding, we have held that "[s]tatutes relating to vacancies on an election ballot ordinarily should be liberally construed in order to serve the legislative policy of providing a full selection of candidates for the voters." Syl. pt. 1, *State ex rel. Cravotta v. Hechler*, 187 W. Va. 790, 421 S.E.2d 698.

In our previous case of *State ex rel. Cravotta v. Hechler*, 187 W. Va. 790, 421 S.E.2d 698, we examined nearly identical facts in answering the same question that is now presently before the Court. The candidate in *Cravotta* also requested permission to withdraw as a candidate for public office based upon "extenuating personal circumstances," citing various familial obligations. As occurred in the case *sub judice*, the State Election Commission accepted the candidate's withdrawal but then refused to permit the Republican Executive Committee to appoint a replacement candidate to fill the vacancy. In *Cravotta*, we examined virtually[12] the same statutory language that is at issue herein and held that

---

[12]The two versions of W. Va. Code § 3-5-19(a) are *virtually* the same because this subsection has been renumbered since the issuance of the *Cravotta* opinion: previously, the subject statutory language was located in subsection (5), and now it is found in subsection (6). Moreover, following this Court's decision in *Cravotta*, the Legislature amended the operative statutory language to make it consistent with this Court's reading of the word "may" as "shall" to require the Commission to permit the affected executive committee to appoint a replacement candidate upon the Commission's acceptance of a prior candidate's withdrawal due to extenuating personal circumstances. The language of the two versions of this statute also reflect additional alterations, which are not relevant to the instant inquiry. *Compare* W. Va. Code § 3-5-19(a)(5) (1991) (Repl. Vol. 2002) *with* W. Va. Code § 3-5-19(a)(6) (2007) (Repl. Vol. 2013).

[w]ithdrawal by a candidate after the primary election under W. Va. Code, 3-5-19(a)(5) (1991), requires that the request to withdraw be sent to the State Election Commission within the prescribed time period. The Commission must then review the reasons for the withdrawal. If the Commission finds that circumstances warrant the withdrawal of the candidate, the Commission should permit the withdrawal and authorize appointment of a replacement candidate by the party's executive committee.

Syl. pt. 2, *Cravotta*, 187 W. Va. 790, 421 S.E.2d 698. We further held that the import of this legislative provision requires the Commission to permit the appointment of a replacement candidate if the Commission accepts the prior candidate's withdrawal:

[w]here the State Election Commission has authorized a candidate to withdraw under W. Va. Code, 3-5-19(a)(5) (1991), the Commission *must* authorize the executive committee of the political party for the political subdivision in which the vacancy occurs to fill the vacancy on timely request by the candidate or the chairperson of such executive committee.

Syl. pt. 3, *Cravotta*, 187 W. Va. 790, 421 S.E.2d 698 (emphasis added). In rendering this ruling, we succinctly observed that "[i]f the Commission felt [the candidate's] reasons were not sufficient to constitute 'extenuating personal circumstances,' it should have refused his attempted withdrawal. However, we do not believe that the Commission can accept a candidate's withdrawal and then refuse to authorize the Executive Committee to fill the vacancy created." *Id.* at 793-94, 421 S.E.2d at 701-02 (footnotes omitted).

The case *sub judice* is essentially the reincarnation of *Cravotta* some twenty-two years later and suggests that the Commission still does not fully comprehend the ramifications of its actions: here, the same fact pattern has once again given rise to the same decision by the Commission to accept the prior candidate's withdrawal but to refuse to authorize the appointment of a replacement candidate because it does not feel sufficient "extenuating personal circumstances" have been presented to warrant such appointment. The Commission has reached this same conclusion despite this Court's prior invalidation of the Commission's same decision in *Cravotta* and the Legislature's express ratification of this Court's interpretation of the subject statutory language *requiring* the Commission to authorize the appointment of a replacement candidate upon its acceptance of a candidate's withdrawal due to extenuating personal circumstances. *See* W. Va. Code § 3-5-19(a)(6) ("If the commission finds the circumstances warrant the withdrawal of the candidate, the commission *shall* authorize appointment by the executive committee to fill the vacancy." (emphasis added)). *See also* Syl. pt. 1, *Nelson v. West Virginia Pub. Emps. Ins. Bd.*, 171 W. Va. 445, 300 S.E.2d 86 (1982) ("It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a

8

mandatory connotation.").

Here, Delegate Raines tendered her "Notice of Withdrawal of Candidacy" due to extenuating personal circumstances, and the Republican Committee correspondingly filed its request to appoint a replacement candidate to fill the vacancy caused by Delegate Raines' withdrawal. Thereafter, the Commission held an emergency meeting on August 13, 2014, for the sole purpose of determining whether Delegate Raines had demonstrated "extenuating personal circumstances" so as to permit the Republican Committee to appoint a replacement candidate. During its meeting, the Commission repeatedly acknowledged that Delegate Raines had effectively withdrawn as a candidate for the 35th District of the West Virginia House of Delegates such that her name would not be on the November 2014 General Election ballot as reflected by the transcript of its August 13, 2014, meeting and the minutes memorializing that meeting.[13] Once the Commission accepted Delegate Raines' withdrawal, it was statutorily required to permit the Republican Committee to appoint a replacement candidate to fill this vacancy. *See* W. Va. Code § 3-5-19(a)(6); Syl. pt. 3, *Cravotta*, 187 W. Va. 790, 421 S.E.2d 698. If, as is apparent from the Commission's discussions during its meeting, the Commission did not feel that Delegate Raines' stated reasons for her withdrawal constituted "extenuating personal circumstances," it should not have permitted her to withdraw and should have denied her request to do so based upon its finding that "the circumstances [do not] warrant the withdrawal of the candidate." W. Va. Code § 3-5-19(a)(6). *Accord Cravotta*, 187 W. Va. at 793-94, 421 S.E.2d at 701-02.

Rather than deciding, in the first instance, whether Delegate Raines had presented circumstances supporting withdrawal due to extenuating personal circumstances, the Commission, instead, accepted her withdrawal and then attempted to apply the "extenuating

---

[13]To the extent that the respondents contend before this Court that the issue of Delegate Raines' candidacy and presence on the ballot was a matter "out of their hands," they are patently incorrect. It is undisputed that the Secretary of State certified a ballot upon which Delegate Raines' name was omitted, due to the acceptance by the Commission of her withdrawal and removal from the ballot. Only the Secretary of State may command Delegate Raines' removal from the ballot as is evidenced by the Secretary of State's obligations pursuant to W. Va. Code § 3-5-18 (2005) (Repl. Vol. 2013) requiring her to "certify . . . to the clerk of the county commission of each county . . . who is entitled to have his or her name placed on the official ballot in the general election as the nominee of the party for such office." Just as we admonished in our recent opinion in *State ex rel. Tennant v. Ballot Commissioners of Mingo County, West Virginia*, ___ W. Va. ___, ___ S.E.2d ___ (No. 14-0877 Sept. 17, 2014), county officials, be they circuit court judges or county ballot commissioners, simply do not have the authority to certify names of candidates to add them to, or to direct their removal from, a ballot.

personal circumstances" test to determine whether the Republican Committee should then be permitted to appoint a replacement candidate. This methodology employed by the Commission is not the law of this State; is directly contrary to both this Court's prior decision in Syllabus point 3 of *Cravotta*, 187 W. Va. 790, 421 S.E.2d 698, and the express statutory language of W. Va. Code § 3-5-19(a)(6); and is indicative of gross misinterpretation and misapplication of the election laws of this State by the elected and appointed officials charged with their administration and enforcement. To be clear, once the State Election Commission has accepted a candidate's withdrawal based upon "extenuating personal circumstances," the Commission "*shall* authorize appointment by the executive committee to fill the vacancy." W. Va. Code § 3-5-19(a)(6) (emphasis added). *Accord* Syl. pt. 3, *Cravotta*, 187 W. Va. 790, 421 S.E.2d 698. The Commission simply is not afforded any discretion regarding the authorization of a replacement candidate once it has accepted a candidate's withdrawal. In other words, the Commission's acceptance of a candidate's withdrawal pursuant to W. Va. Code § 3-5-19(a)(6) constitutes implicit acceptance of the stated reasons therefor, *i.e.*, extenuating personal circumstances. The authorization of the appointment of a replacement candidate is inextricably linked to the acceptance of a prior candidate's withdrawal and is not an independent inquiry. *See* W. Va. Code § 3-5-19(a)(6); Syl. pt. 3, *Cravotta*, 187 W. Va. 790, 421 S.E.2d 698. Should the Commission determine that the stated reasons for a candidate's withdrawal do not constitute "extenuating personal circumstances" in a given case, the Commission should reject the candidate's request to withdraw; then, and only then, may the Commission refuse the executive committee's request to appoint a replacement candidate. *See id.*

Based upon the foregoing, it is apparent to this Court that the Republican Committee has satisfied the elements for the issuance of a writ of mandamus. *See* Syl. pt. 3, *Cooper v. Gwinn*, 171 W. Va. 245, 298 S.E.2d 781. Upon the Commission's acceptance of Delegate Raines' withdrawal as a candidate for the 35th District of the West Virginia House of Delegates due to "extenuating personal circumstances," the Commission was statutorily required to allow the Republican Committee to appoint a candidate to fill such vacancy. *See* W. Va. Code § 3-5-19(a)(6). *Accord* Syl. pt. 3, *Cravotta*, 187 W. Va. 790, 421 S.E.2d 698. Moreover, no other adequate remedy at law exists to correct the Commission's misinterpretation and misapplication of the governing law. Accordingly, the Republican Committee's requested writ of mandamus is hereby granted, and the Secretary of State and the State Election Commission are hereby ordered to allow the Republican Committee to appoint Ms. McDavid as their candidate to fill the vacancy on the November 2014 General Election ballot occasioned by the withdrawal of Delegate Raines and to certify the candidate so appointed. In light of the urgent need to correct the November 2014 General Election ballot to comply with this Court's directives herein, we further direct the Clerk of this Court to issue the mandate contemporaneously with the issuance of this Memorandum Decision.

Writ Granted.

10

**ISSUED:**     October 1, 2014


**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman


**CONCURRING AND WRITING SEPARATELY:**

Justice Menis E. Ketchum
Justice Allen H. Loughry II

Ketchum, Justice, concurring:

I write separately to make very clear my belief that the Election Commission blatantly ignored both a black-letter election law, and a 22-year-old case interpreting that law.

In *State ex rel. Cravotta v. Hechler*, 187 W. Va. 790, 421 S.E.2d 698 (1992), Justice Miller explained that under the election law, the Election Commission must do one of two things when a candidate tries to withdraw from an election:

(1) If the candidate's reason for withdrawing isn't sufficient to constitute "extenuating circumstances," then the candidate must stay on the ballot. The Commission must refuse the candidate's attempt to withdraw.

OR

(2) If the Election Commission finds the candidate shows circumstances extenuating enough to be removed from the ballot, then the Commission absolutely must authorize the appointment of a replacement candidate.

The decision process is a simple choice of one or the other. The Legislature crafted election laws that attempt to be fair to both sides. Sauce for the goose, as they say, is sauce for the gander.

The Election Commission was bound to follow our election law, but it did not. It allowed a Republican candidate for the 35th District to withdraw. Under the law, it was required to allow the Republican party to choose a replacement candidate.

Because the Commission erred, I concur with the majority opinion's decision. The Election Commission must comply with all, not just some, of our election law.

Loughry, Justice, concurring:

The respondents' actions in this case reflect either an inexplicable ignorance of the laws they are sworn to uphold or a brazen refusal to abide by them. Seldom is this Court confronted with a case of which the outcome is so plainly dictated by existing precedent.[1] The fact that this Court's previous ruling on this precise issue was disregarded by the statutory body charged with oversight of our electoral process, as well as the State's chief election official, is both disturbing and unconscionable.

In this case, the State Election Commission accepted a candidate's timely withdrawal, yet refused to allow the executive committee to fill the vacancy with an alternate candidate as expressly permitted by West Virginia Code § 3-5-19(a)(5) (2013). In a case presenting an *identical factual scenario*, this Court plainly and unequivocally held that when the Commission authorizes a candidate to withdraw, "the Commission *must* authorize the executive committee of the political party for the political subdivision in which the vacancy occurs to fill the vacancy on timely request[.]" Syl. Pt. 3, *State ex rel. Cravotta v. Hechler*, 187 W. Va. 790, 421 S.E.2d 698 (1992) (emphasis added). This holding is perfectly clear and, lest there be any confusion on the part of respondents, is the law of this State: "Judicial decisions rendered by the Supreme Court of Appeals of West Virginia are laws of this State." Syl. Pt. 5, *Jackson v. Belcher*, 232 W. Va. 513, 753 S.E.2d 11 (2013). Not once during the August 13, 2014, meeting of the Commission, where it refused to act on the petitioner's request to fill the vacancy created by Delegate Raines' withdrawal, was the *Cravotta* case mentioned or discussed, despite the presence of two attorneys and the State's chief election official, Secretary Tennant.

Despite their seeming unawareness of *Cravotta* at the time they refused to act on the petitioner's statutory-based request,[2] the respondents now attempt to distinguish that decision as plainly inapplicable or simply incorrect. The respondents suggest that Delegate Raines' withdrawal and elimination from the ballot was wholly out of their hands by the time it convened; therefore, the Commission was faced only with the issue of whether a substitute candidate should be permitted. Incredibly, this is the exact same argument made and expressly rejected by this Court in *Cravotta*. In that case, the Commission and Secretary

---

[1]The absence of a debatable question of law is evidenced by the fact that the majority's opinion is issued as a memorandum decision–an opinion format reserved for cases in which "no substantial question of law" is presented. W.V.R.A.P. 21(c).

[2]The Commission and Secretary's seeming unawareness of this case is particularly peculiar given that Commissioner Gary Collias was a sitting Board member during both the *Cravotta* case and the case at bar.

argued that "[a]ny candidate may withdraw from a race" and "[t]he State Election Commission only has responsibility for deciding whether or not a substitute nominee may be appointed." 187 W. Va. at 793 n.4, 421 S.E.2d at 701 n.4. In dismissing this argument as meritless because "it does not comport with the pertinent statutory language," this Court also noted that "[n]o authority is given for this statement, and it contradicts the general rule[.]" *Id.* at 793, 421 S.E.2d at 701. Finally, the Commission and Secretary Tennant make the absurd and outrageous claim that *Cravotta* is inapplicable, despite the existence of identical facts, because the "races themselves are different" inasmuch as *Cravotta* was a two-person race and the 35th District is comprised of an eight-person slate from which four individuals will be elected. The specious attempt by the State Election Commission and Secretary Tennant, as the State's chief election officer, to distinguish the nature of their statutorily-required duties based on the number of candidates in a particular race is demonstrably irresponsible.[3]

It is incumbent upon the Commission and the Secretary of State to be fully knowledgeable of all of the laws governing the scope of their authority and duties. This is particularly so for Secretary Tennant, who is statutorily designated the chief election official of the State, which is "intended to give [her] some position or standing in the election law field." *State ex rel. Manchin v. Lively,* 170 W. Va. 672, 295 S.E.2d 912 (1982). Importantly, while the Secretary of State is constitutionally bound to uphold the laws of this State, "the West Virginia Code gives the Secretary of State no policy-making authority." *Manchin v. Browning*, 170 W. Va. 779, 794, 296 S.E.2d 909, 924 (1982), *overruled on other grounds, State ex rel. Discover Financial Services, Inc. v. Nibert*, 231 W. Va. 227, 744 S.E.2d 625 (2013) (Neely, J., dissenting).

The practical effect of the Commission and Secretary Tennant's abject failure to be knowledgeable of and to comply with this State's election laws has serious consequences. Military and overseas ballots have already been printed and mailed; these ballots must now

---

[3]As further evidence of the wholly meritless defenses being advanced herein, it appears that the State and the intervenor are incapable of even advancing consistent arguments. The intervenor makes the outrageous claim that Delegate Raines did not withdraw timely since she could not have withdrawn until the SEC's meeting of August 13, 2014; meanwhile, the State ardently contends that it had no control over Delegate Raines's withdrawal whatsoever which had occurred well before it was faced with the issue of the request for substitution of candidate. In addition, the intervenor boldly declares that the petitioner's compliance with the 30-day notice provision contained in W. Va. Code § 55-17-3(a)(1) constituted an impermissible delay because the notice provision contained therein is inapplicable. However, in a letter from the Office of the Attorney General, the State maintained that the petition "appears to trigger the 30 day notice period[.]"

be reprinted and re-sent to those voters at considerable cost. Seeking to escape the consequences of their inaction, the Commission and Secretary Tennant offensively suggest that an amendment to the ballot may cause our military men and women and overseas voters to be "confused about the need to complete a second ballot," and thus lead to their disenfranchisement. I seriously doubt that our military and overseas voters are so easily "confused." Perhaps more offensive is the respondents' suggestion that the voters of the 35th District should simply grin and bear the consequences of the Commission's failure to follow the law.

The respondents' failure to comply with the clear mandate of this Court, at considerable taxpayer expense, simply defies belief. This Court has aptly noted that

> [i]t is often said that we in America live in a land where we have a government of laws and not of men. . . . *The concept of a system governed by rule of law implies the subordination of all authorities, be they legislative, executive, or judicial,* to certain principles which would generally be accepted as characteristic of law.

*Cooper v. Gwinn*, 171 W. Va. 245, 250, 298 S.E.2d 781, 786 (1981) (citations omitted) (emphasis added). The State Election Commission and Secretary Tennant have utterly failed in their duty to be knowledgeable of and to uphold the State's election laws at considerable, and perhaps immeasurable, cost to the citizens of the 35th District. Accordingly, I respectfully concur in the majority's opinion.

15